Alexander M. HARGRAVE and Long Island Vineyards, Inc., a New York Corporation, Plaintiffs-Appellants,

v.

OKI NURSERY, INC., a California Corporation, Defendant-Appellee.

No. 43, Docket 80–7298.

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 1980.

Decided Dec. 19, 1980.

Wickham, Wickham & Bressler, P. C., Mattituck (Eric J. Bressler, Mattituck, of counsel), for plaintiffs-appellants.

Ira J. Greenhill, New York City (Charles T. Rubin, New York City, of counsel), for defendant-appellee.

Before MANSFIELD and MULLIGAN, Circuit Judges, and NICKERSON, District Judge.*

NICKERSON, District Judge:

Plaintiffs appeals from an order of the United States District Court for the Eastern District of New York dismissing the complaint against defendant Oki Nursery, Inc. for lack of personal jurisdiction.

Plaintiff Long Island Vineyards, Inc., is a New York corporation of which plaintiff Hargrave is president. Plaintiffs operate a vineyard in Suffolk County, New York, and make wine from the grapes they produce. Oki is a California corporation with its main office in Sacramento and grows and sells nursery stocks including wine grape vines. The complaint, brought in the Supreme Court of the State of New York, Suffolk County, asserts six claims against Oki. The first alleges that during 1973 and 1974 Oki represented to plaintiffs that vines purchased from Oki would be healthy, free of disease, and suitable for wine production, that plaintiffs relied on the representations and in May 1974 purchased vines from Oki, that the representations were knowingly false, and that the vines sold to plaintiffs were diseased and incapable of bearing fruit of adequate quality or quantity for plaintiffs' commercial wine production.

The other five claims allege substantially the same facts and assert, respectively, breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, and negligent performance of the contract.

Asserting diversity of citizenship, Oki removed the action to the District Court and moved to dismiss for lack of personal jurisdiction. The court granted the motion.

In this case New York State law determines whether personal jurisdiction over Oki was obtained. Rule 4(e) of the Federal Rules of Civil Procedure. Section 302(a)(3), of the New York Civil Practice Law and Rules recites, in pertinent part, "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ... who in person or through an agent: ... commits a tortious act without the state causing injury to person or property within the state, ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Plaintiffs say that Oki's false representations constituted fraudulent and tortious acts committed in California and causing injury in New York and that Oki should reasonably have expected its fraudulent representations to have New York consequences, and derived substantial revenue from interstate commerce.

Oki does not dispute that it could reasonably have expected its representations to have consequences in New York or that it derives substantial revenue from interstate commerce. Oki argues, however, that no "tortious act" has been alleged in the complaint since plaintiffs, by applying the fraud label, may not convert a claim for breach of a contractual representation into a tort claim and that in any event no injury was "caused" to plaintiffs "within the state".

The law of torts and the law of contracts are said to protect different interests. *Albemarle Theatre Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 277 N.Y.S.2d 505 (1st Dept. 1967). A plaintiff may recover in contract because the defendant has made an agreement, and the law thinks it desira-

---

* United States District Judge for the Eastern District of New York, sitting by designation.

ble that he be held to that agreement. Tort liability is imposed on the basis of some social policy that disapproves the infliction of a specific kind of harm irrespective of any agreement. *Id.* Specifically the law of fraud seeks to protect against injury those who rely to their detriment on the deliberately dishonest statements of another.

Thus, it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort. Where the conduct alleged breaches a legal duty which exists "independent of contractual relations between the parties" a plaintiff may sue in tort. *Channel Master Corporation v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 263, 151 N.E.2d 833, 836 (1958). If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. *See, e. g., Amigo Foods Corp. v. Marine Midland Bank,* 39 N.Y.2d 391, 396, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581, 584 (1976), *on second appeal* 46 N.Y.2d 855, 414 N.Y.S.2d 515, 387 N.E.2d 226 (1979); *Chase v. United Hospital,* 60 A.D.2d 558, 400 N.Y.S.2d 343 (1st Dept. 1977); *Wegman v. Dairylea Cooperative, Inc.,* 50 A.D.2d 108, 376 N.Y.S.2d 728 (4th Dept. 1975) *appeal dismissed,* 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976); *Miller v. Volk & Huxley, Inc.,* 44 A.D.2d 810, 355 N.Y.S.2d 605 (1st Dept. 1974); *Stella Flour & Feed Corp. v. National City Bank,* 285 A.D. 182, 136 N.Y.S.2d 139 (1st Dept. 1954), *aff'd* 308 N.Y. 1023, 127 N.E.2d 864 (1955). But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract.

In the present case the complaint sets forth all the elements of an action in tort for fraudulent representations, namely, "representation of a material existing fact, falsity, *scienter,* deception and injury." *Channel Master Corporation v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d at 407, 176 N.Y.S.2d 259, 151 N.E.2d 833 (emphasis in original), and see cases cited. Oki is alleged

to have knowingly misrepresented the material existing fact that the vines were healthy. Plaintiffs assert they relied on the misrepresentations, paid for the vines, and sustained injury because they were in fact diseased. These allegations state a claim for fraud, and if Oki indeed made the fraudulent representations it "is subject to liability *in tort* whether the agreement is enforcible or not." *Id.* at 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (emphasis in original).

Oki contends that even if its acts were tortious they cannot be characterized as "causing injury to person or property within the state" of New York within the meaning of Section 302(a)(3). The argument is based on opinions which recite that under that section it is not enough to show an "indirect financial loss resulting from the fact that the injured person resides or is domiciled" in this state. *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980); and see cases cited. In relying on this line of cases Oki contends that whatever "injury" plaintiff sustained was inherent in the vines' diseased condition which must have occurred before they left defendant's control in California, and that the subsequent failure of the vines to produce in New York caused a mere "indirect" financial loss, felt in New York only because plaintiff's corporate headquarters is fortuitously located here.

This court need not decide whether subsequent ill health in New York of vines tortiously injured in California is a sufficiently direct "injury" within New York to sustain jurisdiction under § 302(a)(3). Oki's alleged tort was not the infliction of injury on vines in California or the growing of diseased vines or even the sending of diseased vines to New York. The tort alleged is the making of knowingly false statements as to the condition of the vines. Had Oki made a fraudulent representation that it had vines to sell when it in fact had none, and had plaintiffs made payment from their domicile in New York for non-existent vines, it would have been obvious that plaintiffs had sustained injury in New York. The situa-

tion is no different because the condition of the vines rather than their existence was misrepresented.

One immediate and direct "injury" Oki's alleged tortious misrepresentations caused to plaintiffs was the loss of the money paid by them for the diseased vines. That injury was immediately felt in New York where plaintiffs were domiciled and doing business, where they were located when they received the misrepresentations, and where the vines were to be shipped. So far as the record shows, the alleged false representations injured plaintiff in no state other than New York, certainly not in California. Indeed, the only state in which plaintiffs had "property"· which could sustain "injury" was New York.

This is not a case where a defendant commits a business tort such as unfair competition or diversion of opportunities in one state and the ultimate result is a loss of profits to the plaintiff which is fortuitously domiciled in another state. See, e. g., Lehigh Valley Industries, Inc. v. Birenbaum, 527 F.2d 87, 94–95 (2d Cir. 1975); American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 432–435 (2d Cir. 1971) and cases cited. As the New York Court of Appeals has expressed it, Section 302(a)(3) requires as a predicate for personal jurisdiction "a closer expectation of consequences within the State" than the indirect loss of profits. Fantis Foods Inc. v. Standard Importing Co., 49 N.Y.S.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980); see also Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978); Spectacular Promotions Inc. v. Radio Station WING, 272 F.Supp. 734, 737 (E.D.N.Y.1967). In this case the immediate consequence which Oki foresaw, indeed which it sought to bring about by its sales representations, was payment to it directly by a New York domiciliary. Nothing could be a "closer" or more "direct" result from Oki's representations than the extraction of money from plaintiffs in New York. Accordingly the District Court had personal jurisdiction over Oki.

The court need not consider plaintiffs' other contentions.

The order is reversed.